# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONALD HENSLEY, JR. (#112218)**                    **CIVIL ACTION NO.**

**VERSUS**                                                                 **18-877-SDD-EWD**

**BRENT THOMPSON, ET AL.**

## NOTICE

 Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

 ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 10, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONALD HENSLEY, JR. (#112218)**                **CIVIL ACTION NO.**

**VERSUS**                                       **18-877-SDD-EWD**

**BRENT THOMPSON, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are two Motions to Dismiss ("Motions"): the first filed on behalf of Antonio Whitaker, Shannon Demars, James Cruze, and Jeremy Mckey;[1] the second filed on behalf of Trent Barton.[2] Because the arguments in the two Motions to Dismiss are nearly identical, the two are discussed together. The Motion filed on behalf of Cruze, Demars, McKey, and Whitaker is opposed. For the following reasons, it is recommended that the Motions be granted in part and denied in part.

## I.     Background

*Pro se* Plaintiff, Donald Hensley, Jr. ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana filed the instant Complaint on October 1, 2019 against Brent Thompson ("Thompson"), Jeremy McKey ("McKey"), Antonio Whitaker ("Whitaker"), James Cruze ("Cruze"), Shannon Demars ("Demars"),[3] and Trent Barton[4] ("Barton") (the movants herein, McKey, Whitaker, Cruze, Demars, and Barton are referred to hereinafter collectively as "Defendants"). Each Defendant has been sued in his individual and official capacity.[5] According

---

[1] R. Doc. 22.
[2] R. Doc. 32.
[3] Shannon Demars was originally misnamed as Shannon Demus. (R. Doc. 1). This name was corrected in Plaintiff's amended Complaint. (*See* R. Doc. 24, p.1).
[4] Trent Barton was added as a Defendant via an amended Complaint, (*see* R. Doc. 4) and Plaintiff's complaints against Barton were reiterated in an amended and consolidated complaint, which is the operative complaint in this case. (*See* R. Doc. 24).
[5] R. Doc. 24, p. 4.

to Plaintiff's Complaint,[6] on May 18, 2018, offenders in a tier adjacent to Plaintiff's tier, were ordered into their cells.[7]  Offenders refused to go into their cells, so as a result, chemical agents were allegedly used to gain compliance.[8]  Plaintiff initially did not come into contact with the chemical agent, rather he smelled it in the air and heard other offenders coughing.[9]  Thereafter, Thompson made his way to Plaintiff's tier.[10]  Defendants McKey, Whitaker, Cruze, Demars, and Barton were also present on Plaintiff's tier.[11]

Plaintiff observed Thompson spray another offender, "Chad," allegedly without provocation;[12] thereafter, Thompson proceeded to Plaintiff's cell and sprayed Plaintiff with chemical agent "for no reason at all."[13]  Plaintiff alleges that prior to being sprayed, Plaintiff had not even spoken.[14]  Whitaker, Demars, Cruze, McKey, and Barton allegedly stood by and watched as Thompson sprayed Plaintiff.[15]  Plaintiff alleges that after being sprayed all the officers left the tier.[16]  Plaintiff allegedly choked and vomited as a result of the chemical agent, so he asked a Sergeant "Catching" to make an emergency call and to take a shower.[17]  Plaintiff was seen by emergency personnel but allegedly was not allowed to shower.[18]  Plaintiff seeks monetary relief

---

[6] The operative Complaint is the Complaint contained in R. Doc. 24, which consolidates the allegations of Plaintiff's previous complaints.
[7] R. Doc. 24, pp.1-2.  Based upon the Complaint, it appears as though Plaintiff is housed in Jaguar 3-right tier.  (*See* R. Doc. 24, p. 2).  The initial disturbance occurred on Jaguar 3-left tier. (*See* R. Doc. 24, pp. 1-2).
[8] R. Doc. 24, pp. 1-2.
[9] R. Doc. 24, p. 2.
[10] R. Doc. 24, p. 2.
[11] *See* R. Doc. 24, pp. 6-7.
[12] R. Doc. 24, p. 2.
[13] R. Doc. 24, p. 2.
[14] R. Doc. 24, p. 2.
[15] R. Doc. 24, pp. 6-7.
[16] R. Doc. 24, p. 3.
[17] R. Doc. 24, p. 3.
[18] R. Doc. 24, p. 3.

in the form of compensatory, punitive, and nominal damages against all defendants in their individual and official capacities.[19]

## II.    Law & Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[20] and *Ashcroft v. Iqbal*,[21] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[22]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[25] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[26]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[27]  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded,

---

[19] R. Doc. 24, p. 8.  Plaintiff also requests damages for any future acts of retaliation that may occur as a result of this suit. That request is improper and would require the filing of a subsequent suit should any retaliatory actions occur.
[20] 550 U.S. 544 (2007).
[21] 556 U.S. 662 (2009).
[22] *Twombly*, 550 U.S. at 555.
[23] *Iqbal*, 556 U.S. at 678.
[24] *Id.*
[25] *Id.* at 679.
[26] *Id.* at 678 (internal quotation marks omitted).
[27] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

must be held to less stringent standards than formal pleadings drafted by lawyers.'"[28] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[29] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[30] Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[31] The task of the court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[32]

### B. Eleventh Amendment Immunity

Defendants first contend, and are correct, that all monetary claims levied against them in their official capacities are barred. 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[33] In addition, in *Hafer v. Melo*,[34] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[35] Accordingly, Plaintiff's § 1983 claims asserted against Defendants in their official capacities for monetary damages are subject to dismissal.

---

[28] *Id.* (citation omitted).
[29] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[30] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).
[31] Fed. R. Civ. P. 8(a)(2).
[32] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[33] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[34] 502 U.S. 21 (1991).
[35] *Id.* at 25.

Further, though Plaintiff has yet to serve Thompson, this Court finds it appropriate to dismiss Plaintiff's claims for monetary damages asserted against Thompson in his official capacity *sua sponte*.[36]

In contrast, Plaintiff's § 1983 claims for monetary damages asserted against Defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.[37]

### C. Plaintiff's Failure to Incorporate the Original Complaint

Defendants Whitaker, Demars, Cruze, and McKey argue that Plaintiff has failed to state a claim against them because Plaintiff failed to incorporate the original complaint into one of Plaintiff's amended complaints.[38]  Though Plaintiff did not seek leave to file the now operative complaint until after the Motions to Dismiss were filed, no operative facts were changed as a result of the amendment.  Rather, the operative complaint merely consolidates all previously alleged facts into one document.  This Court granted Plaintiff leave to amend to file the amended complaint that reiterates all the operative facts alleged against Defendants in the original, first and second amended complaints.[39]  Accordingly, Defendants' argument that Plaintiff has failed to state a claim against them on this basis lacks merit.

### D. Supervisory Liability

Next, Defendants argue that Plaintiff failed to state a claim because supervisors are not liable for their subordinates' acts under 42 U.S.C. § 1983.  Defendants' argument appears to be

---

[36] The Notice attached to this Report and Recommendation provides a 14-day period for Plaintiff to file objections. To the extent Plaintiff objects to the *sua sponte* dismissal of his claims against Thompson for monetary relief in his official capacity, this Report constitutes notice that this claim may be dismissed *sua sponte*, and the objection period affords Plaintiff the opportunity to respond.

[37] *Id*. at 29.

[38] R. Doc. 4.

[39] *See* R. Doc. 35.

misplaced. Though Plaintiff notes in his Complaint that Demars and Cruze were supervisors and that Whitaker, McKey, and Barton had "authority,"[40] Plaintiff is alleging that these individuals failed to protect Plaintiff or intervene when they saw excessive force being used against Plaintiff.

Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that causally result in plaintiff's injury.[41] Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[42] Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[43] Supervisory liability[44] can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation.[45]

As mentioned, here, Plaintiff has alleged direct personal participation by each of the Defendants. The allegations do not appear to be predicated on a theory of vicarious liability.

---

[40] R. Doc. 24, pp. 6-7.

[41] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[42] *See Iqbal*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

[43] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[44] Though the term supervisory liability is often used, the Supreme Court has described this as a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 677.

[45] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Rather, each Defendant is alleged to be liable for his own acts, or rather, omissions, that led to the alleged constitutional violation.

### E.  Qualified Immunity

Finally, Defendants allege they are entitled to qualified immunity.  The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[46] Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. [47]  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[48]  To defeat the qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show the official's conduct violated clearly established constitutional or statutory rights.  Although a plaintiff can file a detailed reply

---

[46] *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).
[47] 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[48] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (quotations and citations omitted).

to address the assertion of the qualified immunity defense, that is only required if the complaint is not sufficiently detailed to create a genuine issue as to the illegality of the defendant's conduct.[49] If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the assertion of the qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.[50]

A defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force.[51] If the officer knows that a fellow officer is violating an individual's constitutional rights; has a reasonable opportunity to prevent the harm; and chooses not to act, the officer may be liable.[52] The critical inquiry is whether the officer had both a reasonable opportunity to realize the excessive nature of the force and a reasonable opportunity to intervene and stop it.[53] In resolving whether a plaintiff has sufficiently alleged a bystander liability claim, the court should also consider whether an officer "acquiesce[d] in" the alleged constitutional violation.[54]

Because a failure to intervene or protect claim cannot exist where there was no excessive force, the threshold issue is whether Plaintiff has stated a claim of excessive force against Thompson. It is axiomatic that corrections officers are faced with myriad situations where they must exercise discretion, including situations where they must choose whether to exercise force

---

[49] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (*en banc*).
[50] *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (*en banc*).
[51] *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) *citing Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995).
[52] *Id*.
[53] *Hale*, 45 F.3d at 919. *See also Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 507 (W.D. La. 2001).
[54] *Whitley*, 726 F.3d at 647 *citing Hale*, 726 F.3d 631.

with regard to a prisoner. When force is used, a corrections officer must also exercise discretion to determine the amount of force used.[55]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[56] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[57] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[58]

Viewed in the light most favorable to Plaintiff, he has alleged sufficient facts to state a claim for excessive force.  Plaintiff alleges that he was simply standing in his cell prior to the incident.  There is no information, at this point, to suggest that Thompson needed to apply force to Plaintiff to gain compliance or restore order.  Additionally, Plaintiff contends he was not allowed to shower after the incident, despite a specific request to do so.  Taking these facts as true, a reasonable corrections officer would have known that spraying a compliant prisoner with a

---

[55] *See, e.g., Henry v. North Texas State Hospital*, Civ. Action No. 12-cv-198, 2013 WL 3870292, *3 (N. D. Tex. July 9, 2013) ("Qualified immunity is available to public officials such as prison guards and state hospital employees who must exercise discretion.").
[56] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[57] *Hudson,* 503 U.S. at 10.
[58] *Id.,* 503 U.S. at 7.

chemical agent and/or leaving that still compliant prisoner with the chemical agent on his skin with

no relief was not objectively reasonable.[59]

The Court must now consider whether Plaintiff has stated a claim against Defendants for

failing to intervene in Thompson's alleged excessive use of force. Plaintiff has alleged sufficient

facts to raise questions as to whether the inaction of Defendants was objectively reasonable in light

of the circumstances.[60] Specifically, Plaintiff has alleged Thompson entered Plaintiff's tier and

proceeded to the cell bars of "Chad," sprayed Chad with chemical agents without provocation after

having apparently sprayed inmates in the adjacent tier, and stated "this how we coming every day

from now on."[61] Thompson thereafter proceeded to the bars of Plaintiff's cell where he alleged

sprayed Plaintiff with chemical agents without provocation. Questions exist regarding whether

the conduct of Thompson, in apparently spraying multiple inmates, including one directly before

Plaintiff and also without provocation, should have alerted Defendants that he may also spray

Plaintiff.[62] The Court is unable to determine at this time whether Defendants had a reasonable

opportunity to realize the claimed excessive force and to intervene to stop it. This issue is more

properly resolved after the parties have engaged in discovery.[63]

---

[59] *Id.*; *Whitley v. Albers*, 475 U.S. 312 (1986). *See also, Pea v. Cain*, Civil Action No. 12-779, 2014 WL 268696 (M.D. La. Jan. 23, 2014)(denying summary judgment on the plaintiff's claims that he was sprayed with a chemical agent without justification or provocation and then was not allowed to shower, or, conversely was compelled to shower in hot water, and was not seen by a medical officer until two hours after the incident).

[60] *Hale*, 45 F.3d at 919; *Coleman v. Lee*, 2017 WL 424884 at *3 (W.D. La. Jan. 30, 2017); *Taylor v. City of Shreveport*, 2009 WL 2762710 at *3 (W.D. La. Aug. 27, 2009).

[61] R. Doc. 24, p. 3.

[62] *See Taylor*, 2009 WL 2762710 (W.D. La. Aug. 27, 2009) (wherein the court denied a motion to dismiss on a failure to intervene case because it found that questions existed as to the reasonableness of the defendant's bystander conduct when the officer's partner drew his service weapon during a routine traffic stop. The court noted that questions existed regarding whether the drawing of a weapon during a routine traffic stop was excessive and an act sufficient to alert the defendant that there could be an escalation of force, such that the defendant should have been prepared to take reasonable measures to intervene and protect the plaintiff against any use of excessive force).

[63] *See Coleman*, 2017 WL 424884 at *3 (W.D. La. Jan. 30, 2017).

**F. Exercise of Supplemental Jurisdiction over Plaintiff's Potential State Law Claims Should Be Declined**

Finally, to the extent that Plaintiff asks this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any potential state law claims, the exercise of supplemental jurisdiction should be denied. A district court is authorized to decline supplemental jurisdiction over state law claims if those claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[64] In the instant case, based upon the record, it is appropriate for the Court to decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims.

## RECOMMENDATION

**IT IS RECOMMENDED** the Motions to Dismiss[65] be **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims for monetary damages against Whitaker, McKey, Demars, Cruze, Barton, and Thompson in their official capacities be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that this Court decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims and that any such claims be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that this matter be referred to the Magistrate Judge for further proceedings on Plaintiff's remaining claims, *i.e.*, Plaintiff's claims against Whitaker,

---

[64] 28 U.S.C. § 1367.
[65] R. Docs. 22 & 32.

McKey, Demars, Cruze, Barton, and Thompson, in their individual capacities, for monetary damages.

Signed in Baton Rouge, Louisiana, on October 10, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

12