# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONALD HENSLEY, JR. (#112218)**          **CIVIL ACTION NO.**

**VERSUS**          **18-877-SDD-SDJ**

**BRENT THOMPSON, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 11, 2022.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DONALD HENSLEY, JR. (#112218)**     CIVIL ACTION NO.

**VERSUS**     18-877-SDD-SDJ

**BRENT THOMPSON, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on cross-motions for summary judgment.[1] Each motion is opposed.[2] For the following reasons, the undersigned recommends that the Motion for Summary Judgment[3] filed by Defendants be granted in part and denied in part and the Motion for Summary Judgment[4] filed by Plaintiff be denied.

**I.     Background**

*Pro se* Plaintiff, Donald Hensley, Jr., who is confined at the Louisiana State Penitentiary in Angola, Louisiana, filed the instant Complaint on October 2, 2018, against Brent Thompson, Jeremy McKey, Antonio Whitaker, James Cruze, Shannon Demars,[5] and Trent Barton,[6] alleging these Defendants violated his rights under the Eighth Amendment. This Court previously dismissed Hensley's claims for monetary damages against Defendants in their official capacities, leaving Plaintiff's claims for monetary damages against Defendants in their individual capacities.[7]

---

[1] R. Docs. 99 & 100.
[2] R. Docs. 101 & 102.
[3] R. Doc. 100.
[4] R. Doc. 99.
[5] Shannon Demars was originally misnamed as Shannon Demus. (R. Doc. 1). This name was corrected in Plaintiff's amended Complaint. (*See* R. Doc. 24, p.1).
[6] Trent Barton was added as a Defendant via an amended Complaint, (*see* R. Doc. 4) and Plaintiff's complaints against Barton were reiterated in an amended and consolidated complaint, which is the operative complaint in this case. (*See* R. Doc. 38).
[7] R. Docs. 36 & 40.

According to Plaintiff's Complaint,[8] on May 18, 2018, offenders in a tier adjacent to Plaintiff's tier, were ordered into their cells.[9] Offenders refused to go into their cells, so, as a result, chemical agents were allegedly used to gain compliance.[10] Plaintiff initially did not come into contact with the chemical agent, rather he smelled it in the air and heard other offenders coughing.[11] Thereafter, Thompson made his way to Plaintiff's tier.[12] Defendants McKey, Whitaker, Cruze, Demars, and Barton were also present on Plaintiff's tier.[13]

Plaintiff observed Thompson spray another offender, "Chad," allegedly without provocation;[14] thereafter, Thompson proceeded to Plaintiff's cell and sprayed Plaintiff with chemical agent "for no reason at all."[15] Plaintiff alleges that, prior to being sprayed, Plaintiff had not even spoken.[16] Whitaker, Demars, Cruze, McKey, and Barton allegedly stood by and watched as Thompson sprayed Plaintiff.[17] Plaintiff alleges that, after he was sprayed, all the officers left the tier.[18] Plaintiff allegedly choked and vomited as a result of the chemical agent, so he asked a Sergeant "Catching" to make an emergency call and to take a shower.[19] Plaintiff was seen by emergency personnel but allegedly was not allowed to shower.[20]

---

[8] The operative Complaint is the Complaint contained in R. Doc. 38, which consolidates the allegations of Plaintiff's previous complaints.
[9] R. Doc. 38, pp.1-2.
[10] R. Doc. 38, pp. 1-2.
[11] R. Doc. 38, p. 2.
[12] R. Doc. 38, p. 2.
[13] *See* R. Doc. 38, pp. 6-7.
[14] R. Doc. 38, p. 2.
[15] R. Doc. 38, p. 2.
[16] R. Doc. 38, p. 2.
[17] R. Doc. 38, pp. 6-7.
[18] R. Doc. 38, p. 3.
[19] R. Doc. 38, p. 3.
[20] R. Doc. 38, p. 3.

II.  **Law & Analysis**

   a. **Standard of Review**

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[21] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[22] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[23] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[24] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[25]

   b. **Thompson is not Entitled to Qualified Immunity, but the Remaining Defendants are**

      i. **Excessive Force**

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather

---

[21] Fed. Rule Civ. P. 56. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[22] *Celotex Corp.*, 477 U.S. at 323.
[23] *Anderson*, 477 U.S. at 248.
[24] *Celotex Corp.*, 477 U.S. at 323.
[25] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

3

than in a good faith effort to maintain or restore discipline.[26] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[27] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[28]

Defendants have asserted they are entitled to qualified immunity.[29] The assertion of the qualified immunity defense alters the summary judgment burden of proof.[30] Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[31] "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct."[32]

One piece of evidence filed by Plaintiff in support of his Motion for Summary Judgment includes his deposition.[33] Plaintiff testified in his deposition that he "was sprayed with chemical

---

[26] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).
[27] *Hudson,* 503 U.S. at 10.
[28] *Id.,* 503 U.S. at 7.
[29] R. Doc. 100-1, pp. 10-24.
[30] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).
[31] *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), (citing *Michalik v. Hermann*, 422 F.3d at 262).
[32] *Michalik*, 422 F.3d at 262.
[33] R. Doc. 99-2, pp. 39-53.

agents for no reason" by Thompson.[34]  Plaintiff also testified that, prior to the incident, he heard walkie talkies, smelled gas, and heard people coughing; then, everything got quiet, and officers appeared on his tier.[35]  Thompson was leading the group and stated "this is how we coming."[36]  Chad, who was two cells down from Plaintiff, tried to ask Thompson what he said, and Thompson "gassed" Chad.[37]  Plaintiff was standing at his cell bars and saw Thompson approaching; Plaintiff did not say anything, but, "for a second, [he] turned and [he] was gassed."[38]  The only inmates who were sprayed with chemical agent were Plaintiff and Chad.[39]  When chemical agent was administered on Plaintiff, "the tier was quiet," and, prior to administration of the chemical agent there were no disturbances on Plaintiff's tier.[40]

These facts presented by Plaintiff directly contradict the facts presented by Defendants. All of the evidence presented by Defendants to refute the excessive force claim is to the effect that no chemical agent was used by any officer on Plaintiff's tier or against Plaintiff, generally, on May 18, 2018.[41]  Thompson specifically provides in his affidavit that he did not use chemical agent at all on Plaintiff's tier on May 18, 2018, and that he did not use chemical agent on Plaintiff on May 18, 2018.[42]  Though Thompson asserts that the allegation that he "administered chemical agent on

---

[34] R. Doc. 99-2, p. 41.  The method by which Plaintiff identified the "sprayer" as Thompson is of no consequence; Plaintiff did through the help of other inmates identify the pertinent officer as Thompson. R. Doc. 100-15, p. 29.
[35] R. Doc. 99-2, p. 41.
[36] R. Doc. 99-2, p. 41.
[37] R. Doc. 99-2, pp. 42, 44-45.
[38] R. Doc. 99-2, p. 42.  Though Plaintiff did not see Thompson spray him with chemical agent, he saw Thompson coming down the tier, spray the inmate in the cell adjacent to Plaintiff, and Thompson was the officer holding the chemical spray. R. Doc. 99-2, p. 45.  Further, another inmate who witnessed the incident informed Plaintiff that the officer who sprayed Plaintiff was Thompson. R. Doc. 99-2, p. 45.  Plaintiff had not previously met Thompson. R. Doc. 99-2, pp. 45-46.
[39] R. Doc. 99-2, p. 45.
[40] R. Doc. 99-2, p. 47.
[41] *See, e.g.*, R. Docs. 100-5, 100-6, 100-7, 100-8, 100-9, & 100-10.  Also, the "evidence" regarding the lack of an unusual occurrence report for the use of chemical spray on Plaintiff's tier on May 18, 2018 is not *proof* that chemical agent was not used; rather, this only demonstrates that a UOR was not completed. R. Doc. 100-5, p. 3.
[42] R. Doc. 100-5, p. 3.

5

[Plaintiff] or any other offender is false,"[43] the Plaintiff is not resting on the mere allegation of this; rather, he has presented competent summary judgment evidence to this effect.[44]

Additionally, the facts surrounding the use of force, which is in dispute, vary tremendously. Based upon Plaintiff's version of events, there was absolutely no need for the use of any force because his tier was "quiet," there were no ongoing disturbances, and he was not acting in a noncompliant fashion. Defendants have not produced competent summary judgment evidence to indicate that there was any necessity for the use of any force against Plaintiff or on his tier, generally. Rather, Defendants appear to have walked down Plaintiff's tier without incident to check all cell bars to ensure the cells were secure.[45] Though Defendants have argued that there was a need for force, if any occurred, they have not produced any competent summary judgment evidence that there was any need for the force. In addition to Plaintiff's own statements made in his deposition, he has produced the affidavit of Chadwick Wright, which echoes Plaintiff's assertions regarding the peaceful nature of their tier prior to the entrance of the officers.[46] Based upon the evidence provided by Plaintiff, there was no need for the force and no efforts were made to temper the severity of a forceful response.[47] Based upon the competent evidence presented by Plaintiff, force was applied maliciously rather than in a good faith effort to restore discipline, and when prison officials maliciously and sadistically use force to cause harm, contemporary standards

---

[43] R. Doc. 100-5, p. 4.
[44] *See* R. Doc. 99-2.
[45] R. Doc. 100-5, p. 3.
[46] R. Doc. 99-2, pp. 36-37.
[47] When asked why Thompson sprayed Chad, Plaintiff testified that Thompson appeared aggravated. R. Doc. 99-2, p. 46. Plaintiff further testified that he did not "have the slightest idea" why he administered chemical agent onto Plaintiff. *Id.* Plaintiff had received a disciplinary report earlier in the day, but that report did not concern Thompson. *Id.*

6

of decency are always violated.[48] Further, Plaintiff did suffer *some* injury, and the lack of serious injury does not render an Eighth Amendment claim inviable.[49]

Based upon the foregoing evidence and law, Plaintiff has produced sufficient evidence to demonstrate that a genuine issue of material fact exists regarding whether Thompson violated the Eighth Amendment by using excessive force against Plaintiff on May 18, 2018; the fact that Defendants' supporting evidence in large part relies on stating that Plaintiff's accusations, which are supported by competent summary judgment evidence, are false is a red flag that a genuine issue of material fact exists. Because a genuine issue of material fact exists, Plaintiff's Motion for Summary Judgment may not be granted, and Defendants' Motion for Summary Judgment may not be granted on this prong of the qualified immunity analysis. Rather, the Court must proceed in determining whether such a use of force was clearly established at the time of the violation.

Prior to the filing of the instant motions, the parties had previously filed cross-motions for summary judgment, and the undersigned recommended grating Defendants' motion for summary judgment on the basis that it was not clear that one instance of pepper spray violated the Eighth Amendment at the time of the incident complained of herein. That Report relied entirely on the Fifth Circuit's opinion in *McCoy v. Alamu*.[50] After issuance of that Report, the United States

---

[48] *Whitley v. Albers*, 475 U.S. 312, 327 (1986). That is not to say that every malevolent touch by a prison guard gives rise to a federal action. *Hudson*, 503 U.S. at 9.

[49] Some courts still place heavy reliance on the *de minimis* nature of the injury rather than the nature of the force when making a determination regarding the viability of an Eighth Amendment claim, but this is improper. *See Whitaker v. Kempt, et al.*, No. 19-349, 2021 WL 2388978, at *8 (E.D. Tex. May 20, 2021). Though *some* injury is required, it is clear that the injury does not have to be significant to state a claim under the Eighth Amendment, and the focus should be on the nature of the force rather than the nature of the injury, though the significance of such may be guiding. *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (a plaintiff asserting an excessive force claim does not have to show a significant injury but must be able to show he suffered from at least some form of injury); *Wilkins* 559 U.S. at 38 (courts must focus on the nature of the force applied, rather than a certain quantum of injury); *Bangmon v. Lance*, No. 18-19, 2019 WL 5653731, at *5 (S.D. Tex. Oct. 30, 2019) (recognizing that the focus of the excessive force inquiry is on the amount of force used, not the quantum of injury). This Court finds that burning eyes, coughing, and vomiting, as occurred here, is sufficient to state a claim under the Eighth Amendment.

[50] 950 F.3d 226 (5th Cir. 2020).

Supreme Court vacated the Fifth Circuit's opinion in *McCoy*[51] directing the Fifth Circuit to reconsider the opinion in *McCoy* in light of *Taylor v. Riojas*.[52] *McCoy* was remanded from the Fifth Circuit back to the Southern District of Texas, where the case originated, for further consideration. Since the remand, the Southern District of Texas has made no further rulings regarding the substance of the action.[53]

In considering the matter before the Court now, in light of *Taylor*,[54] the undersigned finds that it was clearly established that an officer may not use chemical spray on an inmate without provocation or any reason for the use of the spray.[55] For decades, it has been clear that punching or hitting an offender for no reason is excessive; the fact that the force employed was a chemical rather than fist makes no difference.[56] In both circumstances, it is clear that if force is unnecessary, any force used is excessive. Further, other circuits have, for decades, found that "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."[57] Accordingly, it was clearly established on May 18, 2018, that Thompson could not use chemical spray against

---

[51] *McCoy v. Alamu*, 141 S.Ct. 1364 (2021).
[52] 141 S.Ct. 52 (2020).
[53] *See McCoy v. Alamu*, No. 17-235 (S.D. Tex.).
[54] In *Taylor*, the United States Supreme Court reversed the Fifth Circuit's ruling on qualified immunity reinforcing that the question with respect to qualified immunity is whether a reasonable correctional officer would know that his or her actions/inactions or the conditions to which the inmate is subjected would offend the constitution. *Taylor*, 141 S.Ct. at 54.
[55] *See Terral v. Ducote*, No. 15-2366, 2017 WL 6568515, at *8 (W.D. La. Sept. 28, 2017) ("as early as 2004-2005, courts have recognized that it was clearly established that an officer's use of pepper spray is excessive where the detainee already is handcuffed and hobbled.").
[56] *See United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." Id. At 53-54 (internal quotation marks and citations omitted)).
[57] *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)); *Hill v. Crowe*, No. 19-1051, 2020 WL 2750284, at *3-5 (D.S.C. May 6, 2020) (denying summary judgment where the defendant asserted qualified immunity, but there were issues of fact as to whether the use of chemical spray was necessary based upon the circumstances and noting that the unconstitutional nature of applying chemical spray when not necessary was clearly established when the incident occurred in March 2018); *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013)..

Plaintiff for the sole purpose of causing harm, and based upon Plaintiff's version of events, Thompson is not entitled to qualified immunity.

### ii. Plaintiff's Claim for Compensatory Damages is Subject to Dismissal

Though lack of more than "*de minimis*" injury does not preclude recovery, generally, under the Eighth Amendment, the Prison Litigation Reform Act precludes recovery of compensatory damages for *de minimis* physical injury.[58] Thus, although Plaintiff may be able to recover nominal or punitive damages if he is able to establish the existence of a constitutional violation that merits such recovery at trial,[59] Plaintiff is precluded from the recovery of compensatory damages because he has not made a sufficient allegation of physical injury in this case.[60]

### iii. Failure to Intervene

This Court previously noted that the failure to intervene claims were more properly left for resolution after the parties engaged in discovery.[61] Now, with the benefit of discovery, the undersigned recommends that the failure to intervene claims be dismissed for the following reasons. Under the Eighth Amendment to the United States Constitution, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another officer's use of excessive force under a theory of bystander liability. An

---

[58] 42 U.S.C. § 1997e ("[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

[59] *Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007) (collecting cases). To recover nominal or punitive damages, Plaintiff must establish a violation of his constitutional rights. Additionally, in order to recover punitive damages, Plaintiff would be required to establish that Defendants violated his constitutional rights with "evil intent" or "callous indifference." *See Allen v. Stadler*, 201 F.Appx. 276 (5th. Cir. 2006) (citing *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th. Cir. 2003)). Plaintiff has specifically sought punitive damages in this case. R. Doc. 38, p. 8.

[60] *Hale v. Vannoy*, Civ. Action No. 16-355, 2016 WL 7650670, at *2 (M.D. La. Dec. 16, 2016), *report adopted*, *Hale v. Vannoy*, Civ. Action No. 16-355, 2017 WL 62650 (M.D. La. Jan. 5, 2017)("[T]he plaintiff is not entitled to the recovery of compensatory damages in this case because he has not alleged a physical injury sufficient to support such recovery."); *McKissick v. Williams*, No. , 2015 WL 9269302 (W.D. La. Oct. 22, 2015) (burning sensation caused by chemical spray is insufficient for recovery of compensatory damages under 42 U.S.C. § 1997e). *See also Hutchins*, 512 F.3d at 198.

[61] R. Doc. 36, p. 11.

officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.[62]

Plaintiff testified in his deposition that McKey was right behind Thompson, and Whitaker, Cruze, Barton, and Demus were behind McKey, one after the other.[63] Considering that the spraying of the chemical only lasted one second and that these officers were behind one another, it does not appear that any of these Defendants had an opportunity to prevent the harm, as it occurred so quickly.[64] Additionally, the spraying of Plaintiff did not come immediately after the spraying of Chad in rapid succession, as it appeared may have been the case in the complaint. Rather, Plaintiff's deposition makes clear that Chad was in cell 8 and was sprayed when he attempted to ask a question; then, Defendants passed cell 7, without incident, prior to appearing in front of Plaintiff's cell, cell 6.[65] Further, if Plaintiff could not anticipate the quick burst of spray, it is unreasonable to assume that any officer would have anticipated the use of the spray in enough time to intervene.[66] Because, based upon Plaintiff's iteration of the facts, these Defendants did not have a reasonable opportunity to intervene, the Court cannot find their inaction violated the Constitution and the claims against them are subject to dismissal.

### iv. Plaintiff Cannot State a Claim for the Lack of Shower Provided After the Alleged Incident of Excessive Force

To the extent Plaintiff has attempted to state a claim regarding the fact that he was not allowed to shower after the incident of chemical spray, he cannot state a claim of constitutional

---

[62] *See Whitley v. Hale*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995)).
[63] R. Doc. 99-2, p. 46.
[64] *See Covarrubias v. Wallace*, 612 Fed.Appx. 701, p. 702 (5th Cir. May 11, 2015) (no bystander claim when incident unfolded so quickly that officers could not have practically intervened).
[65] R. Doc. 100-15, pp. 24-25.
[66] R. Doc. 100-15, p. 14. Plaintiff's deposition makes clear that "for a second [he] turned and [he] was gassed." A second is not sufficient time for any intervention.

dimension.[67] Moreover, the individuals who allegedly did not allow Plaintiff to shower, Sergeant Doss and Sergeant Ketchin, are not named as Defendants.[68] Accordingly, Plaintiff has failed to state a claim in this regard and the claim arising from not being permitted to shower should be dismissed with prejudice *sua sponte*.[69]

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment[70] be **GRANTED IN PART**, that all of Plaintiff's claims against Jeremy McKey, Antonio Whitaker, James Cruze, Shannon Demus, and Trent Barton, as well as his claims for compensatory damages arising from the incident of excessive force occurring on May 18, 2018 be **DISMISSED WITH PREJUDICE**; that Plaintiff's "Motion for Cross-Summary Judgment"[71] be **DENIED**; that Plaintiff's claims arising from the failure of officers to provide him with a shower be **DISMISSED WITH PREJUDICE**, *sua sponte*, and that this matter be referred back to the undersigned for

---

[67] See Pea v. Cain, No. 12-779, 2014 WL 268696, *7, n. 7 (M.D. La., Jan. 23, 2014) ("a failure to allow an inmate to shower after an application of irritant spray is not the type of wrongdoing that rises to the level of deliberate indifference.") (citing Roach v. Caddo Parish Sheriff's Dept., No. 07-364, 2010 WL 420068 (W.D. La., Jan. 29, 2010); Dufrene v. Tuner, Civil Action No. 05-2066, 2006 WL 2620091 (W.D. La., Aug. 14, 2006).
[68] R. Docs. 1 & 38. Plaintiff identified Sergeants Doss and Ketchin as the officers whom he requested a shower from in his deposition testimony. R. Doc. 8-1, p. 11.
[69] The Court possesses the inherent authority to *sua sponte* dismiss a party or expand upon the grounds for dismissal urged by movants as long as the adverse parties receive notice and a chance to respond. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (unpubl.) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer). This Report and Recommendation provides adequate notice to Plaintiff. *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).
[70] R. Doc. 100.
[71] R. Doc. 99.

further proceedings on Plaintiff's remaining claim (*i.e.*, Plaintiff's claim against Brent Thompson for nominal and punitive damages arising from the incident of excessive force occurring on May 18, 2018).

Signed in Baton Rouge, Louisiana, on February 11, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**